UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENOMATICA, INC.,<br><br>   Plaintiff,<br>v.<br><br>ICELANDIC GENOMIC VENTURES HOLDING, S.A.R.L. et al.,<br><br>   Defendants,<br><br>AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS. | Case No. 3:12-cv-0268-GPC-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT;**<br><br>**(2) DENYING AS MOOT EX PARTE MOTION FOR RIGHT TO ATTACH ORDER AND FOR WRIT OF ATTACHMENT**<br><br>**(ECF NOS. 34, 48)** |

## BACKGROUND

**I. Procedural History**

This is an interpleader action in which Genomatica, Inc. ("Genomatica") asserts it is an innocent stakeholder in a dispute over the ownership of certain shares of its stock. (ECF No. 1.) In its Complaint, Genomatica alleges a dispute has arisen between Iceland Genomic Ventures Holding S.à.R.L. ("IGVH")[1], on the one hand, and Iceland Genomic Partners ("IGP"), on the other hand. (Id.)

On May 22, 2012, IGVH filed an answer to Genomatica's Complaint, also asserting

---

[1] Erroneously sued as "Icelandic Genomic Ventures Holding S.à.R.L." and also known as "Iceland Genomic Ventures SA."

counterclaims against Genomatica and cross-claims against IGP, Tryggvi Petursson ("Petursson"), and Iceland Genomic Venture Partners, S.A. ("IGVP") (all three collectively, "Petursson Defendants"). (ECF No. 7.)

On July 10, 2012, IGP filed an answer to Genomatica's Complaint. (ECF No. 18.)

On September 17, 2012, the Peturrson Defendants filed a joint motion for an extension of time to respond to IGVH's cross-claims, which Judge Lorenz granted on September 18, 2012. (ECF Nos. 32, 33.)

On September 25, 2012, IGVH filed an ex parte motion for a right to attach order and writ of attachment, seeking to attach the Petursson Defendants' assets. (ECF No. 34.) While Genomatica filed a notice of non-opposition to IGVH's Ex Parte Motion, (ECF No. 39), the Petursson Defendants filed no response to IGVH's Ex Parte Motion. What's more, the Petursson Defendants filed no response to IGVH's cross-claims. Thus, at the request of IGVH, the Clerk of Court entered a default as to each of the Petursson Defendants on October 3, 2012, (ECF No. 41), and, on November 9, 2012, IGVH moved for entry of default judgment, (ECF No. 48).

## II.  Factual Background

### A.  IGVH's Cross-claims Against Peturrson Defendants

IGVH asserts three "cross-claims" against the Peturrson Defendants, including claims for (1) fraudulent misrepresentation, (2) conversion/trover, and (3) interference with prospective business. (ECF No. 7 at 18-22.) The claims relate to two transactions: the Genomatica Transaction and the GT Life-Intrexon Merger Transaction.

#### 1.  Genomatica Transaction

IGVH alleges that, from 2001 through 2002, it invested a total of $3,500,000 in Genomatica in exchange for shares, options, and warrants. IGVH alleges that, in 2011, Genomatica prepared for a public offering and, in doing so, filed forms with the SEC listing "Iceland Genomic Ventures, S.A." as a shareholder and Peturrson as the person with sole voting and investment power with respect to the shares held by "Iceland Genomic Ventures, S.A."

IGVH alleges that on December 7, 2011, Petursson informed Genomatica and its attorneys that IGVH would be dissolving and that Genomatica should transfer IGVH's Genomatica shares to IGVH's

parent company, Genomic Holding, SA ("Genomic") and to Petursson's own company, IGP. IGVH alleges Genomatica issued new stock certificates because Peturrson told Genomatica the original stock certificates were lost, even though what appears to have really happened is that Peturrson attempted to obtain the certificates from the bank where the original certificates were being held but was not permitted to do so because he was not a director of IGVH.

Accordingly, Genomatica now claims to have transferred 460,417 shares of IGVH's Genomatica stock to IGP and 3,100,000 shares of IGVH's Genomatica stock to IGVH's parent company, Genomic.

### 2.    GT Life-Intrexon Transaction

IGVH alleges that by virtue of its ownership interest in Genomatica, IGVH was also a commensurate shareholder of an entity spun-off by Genomatica called GT Life Sciences ("GT Life") (not a party to this action).

IGVH alleges that GT Life was to merge with another company called Intrexon (not a party to this action) in 2009. IGVH alleges Peturrson – holding himself, IGP, and IGVP out to be in a position of authority over IGVH – consented to GT Life's merger with Intrexon on behalf of IGVH. IGVH further alleges that Peturrson directed a portion of the merger funds to be paid to himself and IGP.

### 3.    No Consent

IGVH alleges none of the Petursson Defendants were ever appointed to IGVH's board of managers and that none of the Peturrson Defendants have any basis to claim any authority over IGVH.[2] IGVH alleges action can only be taken on behalf of IGVH with the approval of two managers from the Board of Managers and that no such approval was obtained or given for Petursson's actions in dealing with Genomatica or GT Life in 2011 or 2012.

In sum, IGVH seeks the destruction of the stock certificates that Genomatica transferred to IGP and Genomic at Peturrson's direction. IGVH also seeks the return of the money that it alleges Peturrson acquired in connection with the GT Life-Intrexon merger.

---

[2] Notwithstanding Genomatica's allegations that Petursson was Genomatica's only point-of-contact with IGVH until January 2012, IGVH alleges any authority Peturrson had to act on behalf of IGVH was terminated in 2007. (ECF No. 7 at 14.)

# DISCUSSION

## I. Default Judgment

### A. Legal Standard

The Clerk of the Court must enter default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may grant a default judgment after the Clerk's entry of default. Fed. R. Civ. P. 55(b)(2). Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924–25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has articulated the following factors for courts to consider in determining whether default judgment should be granted:

> (1) the substantive merit of the plaintiff's claims, (2) the sufficiency of the complaint, (3) the amount of money at stake, (4) the possibility of prejudice to the plaintiff if relief is denied, (5) the possibility of disputes to any material facts in the case, (6) whether default resulted from excusable neglect, and (7) the public policy favoring resolutions of cases on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation omitted). "Plaintiff is required to prove all damages sought in the complaint. In addition, a judgment by default shall not be different in kind or exceed in amount that prayed for in the complaint. In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. Phillip Morris USA, Inc. v. Castworld Prods., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quotations & citations omitted).

### B. Analysis

On one hand, IGVH's claims against the Petursson Defendants are sufficiently pled, such that, when taken as true, they demonstrate the Petursson Defendants acquired funds in connection with the GT Life-Intrexon merger without IGVH's consent. To that end, the Court finds IGVH would suffer prejudice if default judgment is not granted, as funds from the merger remain in escrow and will not otherwise be distributed to IGVH without court intervention. Moreover, given the magnitude of the transactions that Petursson orchestrated, the amount of money at stake does not counsel against

granting default judgment, and the Petursson Defendants' default does not appear to be from excusable neglect but rather from a decision to cease participation in this case.

On the other hand, given what appears to be a long, convoluted relationship between IGVH and the Petursson Defendants, the Court finds it possible that, had the Petursson Defendants participated, there would have been a dispute of several material facts. In that vein, resolving this case on default judgment contravenes the public policy favoring resolutions of cases on the merits. Still, resolving this case on default judgment is, at this time, the only likely resolution of IGVH's case against the Petursson Defendants. Thus, after considering the Eitel factors, the Court finds it appropriate to grant in part and deny in part IGVH's Motion for Default Judgment as set forth below.

### 1. Merger Funds

IGVH asserts Petursson siphoned $694,635 from the funds derived from the merger of two non-party entities – GT Life Sciences and Intrexon. As evidence, IGVH provdes a U.S. Bank payment confirmation, which lists $694,635 and $2,191,805.66 being wired to IGVH, and a letter of transmittal, signed by Peturrson, which directs the transfer of $694,635 to IGP and the remainder of $2,800,000 to IGVH. (ECF No. 34-4 at 6-9.) The Court considers this evidence sufficient to **GRANT** the Motion for Default Judgment as to the merger funds and thus directs the entry of judgment in favor of IGVH in the amount of $694,635.

### 2. Shares & Options

IGVH asserts Petursson wrongfully acquired $31,787.89 as proceeds for 40,000 stock options. IGVH also asserts Petursson wrongfully directed the transfer of $49,825.74 to IGP as proceeds on 60,417 shares of IGVH's Genomatica stock. Thus, IGVH asserts it is owed a total of $81,613.63.

As evidence, IGVH cites to the U.S. Bank confirmation, which lists $31,787.89 being wired to Petursson and $49,825.74 to IGP – both in connection with the GT Life-Intrexon merger. The Court considers this evidence sufficient to **GRANT** the Motion for Default Judgment as to the shares and options funds and thus directs the entry of judgment in favor of IGVH in the additional amount of $81,613.63.

### 3. Share Certificates

IGVH requests a judgment directing "Genomatica to destroy the share certificates in its

possession that purportedly were created at the direction of the Petursson Defendants." (ECF No. 48-1 at 23.) Because Genomatica is not a party to IGVH's claims against the Petursson Defendants, however, it would be inappropriate for this Court to coerce Genomatica to undertake such action. Accordingly, the Motion for Default Judgment is **DENIED** as to the destruction of the share certificates. This is a matter to be resolved through the remainder of this interpleader action.

### 4. Punitive Damages

In a diversity case such as this, state law applies to substantive questions such as whether punitive damages are available on a motion for default judgment. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 437 (1996); Freund v. Nycomed Amersham, 347 F.3d 752, 761-62 (9th Cir. 2003).

Under California law, a "plaintiff must give notice to the defendant of the amount of special and general damages sought before a default may be taken." Wiley v. Rhodes, 223 Cal. App. 3d 1470, 1473 (1990) (citing Cal. Civ. Proc. § 425.11). Such notice must also be given regarding punitive damages if a plaintiff seeks such damages on a motion for default judgment. Wiley, 223 Cal. App. 3d at 1473. "There is no hard and fast rule regarding the precise method or timing of service of the section 425.11 statement of damages. Rather, [courts] are to determine in each case whether minimum standards of due process have been met." California Novelties, Inc. v. Sokoloff, 6 Cal. App. 4th 936, 945 (1992); see also Schwab v. Southern California Gas Co., 114 Cal. App. 4th 1308, 1321 (2004) ("[T]he case-by-case approach of the California Novelties court satisfies the applicable statues and the requirements of due process.").

Here, nothing in the record indicates the Petursson Defendants have been served with notice of the amount of punitive damages IGVH now seeks. The Motion for Default Judgment – while served on the Petursson Defendants – does not specify any amount of punitive damages. As such, punitive damages are not available under California law.

In any event, the Court is not convinced Petursson acted with the necessary intent to justify punitive damages. It appears Petursson acted on behalf of IGVH for a significant length of time without IGVH's objection. IGVH provides an email, for example, that appears to indicate Petursson was to be on IGVH's board of directors. (See ECF No. 48-1 at 9 (citing ECF No. 27, Ex. C).) And,

at oral argument, IGVH ratified Petursson's conduct in approving the GT Life-Intrexon merger.

As discussed above, the Court is willing to grant judgment in favor of IGVH as to the funds Petursson redirected to himself and the other Petursson Defendants. The Court, however, is not convinced that Petursson "knowingly, recklessly and wantonly [acted] . . . to the detriment of IGVH" based on the evidence before the Court. IGVH omits too many facts regarding its history with Petursson. Accordingly, the Motion for Default Judgment is **DENIED** as to punitive damages.

### 5. Attorney Fees

In diversity cases, state law governs the availability of attorney fees. See Champion Produce, Inc. v. Ruby Robinson Co., Inc., 342 F.3d 1016, 1024 (9th Cir. 2003). Under California law, a party may only recover attorney fees incurred in litigation when the party "has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees." Santisas v. Goodin, 17 Cal. 4th 599, 606 (1998).

Here, IGVH has provided no basis – in an agreement, statute, or other law – upon which to base its claim for recovery of attorney fees. Accordingly, the Motion for Default Judgment is **DENIED** as to attorney fees.

## II.   Writ of Attachment

Under Federal Rules of Civil Procedure, Rule 64, state law provides all remedies when property is to be seized for the purpose of securing satisfaction of a judgment, unless a federal statute governs.

Under California law, a prejudgment attachment may be issued if the claim sued upon is (1) for money based upon a contract express or implied; (2) of a fixed or readily ascertainable amount not less than $500; (3) either unsecured or secured by personal property, not real property; and (4) commercial in nature. Cal. Civ. Proc. § 484.010.

Furthermore, the Court must find that (1) the claim is one on which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for any other purpose than to secure recovery on the claim; and (4) the amount to be secured by the attachment is greater than zero. Cal. Civ. Proc. § 484.090.

Here, because the Court grants default judgment as discussed above, IGVH's Ex Parte Motion

for Right to Attach Order and Writ of Attachment is moot, as attachment is a "prejudgment" remedy. Accordingly, the Ex Parte Motion is **DENIED AS MOOT**.

## CONCLUSION

After a careful review of IGVH's submissions, and for the foregoing reasons, **IT IS HEREBY ORDERED** that default judgment be entered in favor of IGVH and against the Petursson Defendants in the amount of $776,248.63.   **IT IS FURTHER ORDERED** that IGVH's Ex Parte Motion for Right to Attach Order and Writ of Attachment is **DENIED AS MOOT**.

DATED:  January 31, 2013

HON. GONZALO P. CURIEL
United States District Judge