1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   GENOMATICA, INC.,                    )   Case No. 3:12-cv-0268-GPC-BGS
                                          )
12                 Plaintiff,             )   **ORDER:**
                                          )
13   v.                                   )   **(1) GRANTING GENOMATICA,**
                                          )   **INC.'S MOTION TO DISMISS**
14                                        )   **AND DISCHARGE;**
     ICELANDIC GENOMIC VENTURES           )
15   HOLDING, S.A.R.L. et al.,            )   **(2) DENYING IGVH'S MOTION**
                                          )   **FOR SUMMARY JUDGMENT**
16                 Defendants,            )
                                          )   **(3) GRANTING GENOMATICA,**
17   _____     )   **INC.'S MOTION TO DISMISS**
                                          )   **IGVH'S COUNTERCLAIMS;**
18   AND RELATED COUNTERCLAIMS            )
19   AND CROSS-CLAIMS.                    )   **(ECF NOS. 19, 23, 27)**
                                          )
20   _____     )

21                        **INTRODUCTION**

22         This is an interpleader action in which Genomatica, Inc. ("Genomatica") asserts

23   it is an innocent stakeholder in a dispute over the ownership of certain shares of its

24   stock. (ECF No. 1.) In its Complaint, Genomatica alleges a dispute has arisen between

25   Iceland Genomic Ventures Holding S.à.R.L. ("IGVH"), on the one hand, and Iceland

26   Genomic Partners ("IGP"), on the other hand. (Id.)

27         On May 22, 2012, IGVH filed an answer to Genomatica's Complaint, also

28   asserting counterclaims against Genomatica and cross-claims against IGP, Tryggvi

1 Petursson ("Petursson"), and Iceland Genomic Venture Partners, S.A. ("IGVP") (all

2 three collectively, "Petursson Defendants").  (ECF No. 7.)

3      On July 10, 2012, IGP filed an answer to Genomatica's Complaint.  (ECF No.

4 18.)  The Petursson Defendants, however, never responded to IGVH's cross-claims.

5 Accordingly, this Court entered default judgment on IGVH's cross-claims against the

6 Petursson Defendants on January 31, 2013.  (ECF No. 60).

7      Before the Court are three pending motions.  On August 1, 2012, Genomatica

8 filed a motion to dismiss and discharge, which has been fully briefed.  (ECF Nos. 23,

9 28, 31).  On August 27, 2012, IGVH filed a motion for summary judgment, which has

10 also been fully briefed, (ECF Nos. 27, 61, 62).  On July 16, 2012, Genomatica filed a

11 motion to dismiss IGVH's counterclaims,  which has also been fully briefed.  (ECF

12 Nos. 19, 26, 30).  The Court held a hearing on these motions on February 22, 2013.

13 (ECF No. 63.)  Having considered the parties' submissions and arguments, and for the

14 reasons that follow, the Court hereby **GRANTS** Genomatica's Motion to Dismiss &

15 Discharge, **DENIES** IGVH's Motion for Summary Judgment; and **GRANTS**

16 Genomatica's Motion to Dismiss IGVH's Counterclaims.

17 **BACKGROUND**

18      Genomatica alleges it issued 3,000,000 shares of its stock to IGVH in 2000 and

19 500,000 of its shares to IGVH in 2001.[1]  (ECF No. 1 at ¶¶ 2, 8-9.)  Genomatica alleges,

20 and the stock purchase agreements indicate, that Petursson executed the purchase

21 agreements on behalf of IGVH.[2]  (Id. ¶¶ 8-9; ECF No. 19-3 at 4; ECF No. 19-4 at 4.)

22

23    [1] The share certificates indicate they were actually issued to an entity called "Iceland Genomics
24 Ventures, S.A."  In paragraph 2 of its Complaint, Genomatica alleges that "Icelandic Genomic Ventures Holding, S.a.R.L" is also known as "Iceland Genomics Ventures, S.A."  IGVH denies this in paragraph 2 of its Answer and asserts it is "incorrectly identified as 'Icelandic Genomic Ventures
25 Holdings, S.a.R.L. a/k/a Iceland Genomic Ventures, S.A."  IGVH appears to take issue with the allegation because (1) its name begins with "Iceland," not "Icelandic," and (2) it is not also known as
26 "Iceland Genomics Ventures, S.A.," but has instead – in almost all of Genomatica's corporate records – been erroneously identified as such.
27

28    [2] The Court considers the purchase agreements because they are referenced in Genomatica's Complaint, because IGVH refers to the purchase agreements in its counterclaims against Genomatica, and because neither party has contested their authenticity.  See Van Buskirk v. Cable News Network,

2

The parties agree that, in July 2007, Petursson consented to a merger on behalf of IGVH, which consent IGVH ratified at oral argument on its Motion for Default Judgment.

Genomatica alleges that, in September 2007, Petursson exercised a stock option to purchase 60,417 shares of Genomatica stock, which option he was granted in January 2007.  Genomatica alleges that Petursson then executed a transfer of those shares from himself to his company, IGP.  It is unclear whether IGVH claims ownership of those 60,417 shares.

Genomatica alleges it filed "Amendment No. 3 to Form S-1 Registration Statement" with the SEC in November 2011. IGVH attaches the registration statement to its responsive pleading, and Genomatica does not contest its authenticity. (ECF No. 7 at 24.)  The registration statement provides that Iceland Genomics Ventures, S.A. owns 3,560,417 shares of stock.  (ECF No. 7 at 26.)  In a footnote, the registration statement provides that Iceland Genomics Ventures, S.A.'s number of shares "Includes 3,500,00 shares of common stock held by Iceland Genomics Ventures, S.A. and 60,417 shares of common stock held by Iceland Genomics Partners." (Id. at 25.) The footnote goes on to state: "Tryggvi Petursson has sole voting and investment power with respect to the shares held by Iceland Genomics Ventures, S.A. and Iceland Genomics Partners." (Id.)

Genomatica asserts that, in December 2011, Petursson informed Genomatica that "Iceland Genomics Ventures was closing down and that the partnership was terminating."  Genomatica claims "Petursson requested that Genomatica transfer the 3,500,000 Genomatica shares owned by Iceland Genomics Ventures to Iceland Genomics Ventures' two main shareholders, which he identified as Genomic Holding S.A. and Iceland Genomic Partners."   Genomic Holding, S.A. is IGVH's parent company and not a party to this action.  IGP is Petursson's company.

Genomatica alleges "Petursson instructed that 3,100,000 shares be transferred

Inc., 284 F.3d 977, 980 (9th Cir. 2002).

to Genomic Holding S.A. and the remaining 400,000 shares be transferred to Iceland Genomic Partners."  Genomatica claims that, "[i]n connection with this transfer, Petursson executed documents as General Manger of Iceland Genomics Ventures," and that "Petursson also executed affidavits of loss in connection with the issuance of new stock certificates as General Manager of Iceland Genomics Ventures."  Genomatica alleges it "proceeded with the execution of the stock transfer but, at Petursson's request, retained the new stock certificates."

Genomatica alleges that thereafter, in January 2012, it received notice from counsel for IGVH "that the stock was actually owned by Icelandic Genomic Ventures Holding, and that no entity with the name Iceland Genomics Ventures existed in Luxembourg."  Genomatica alleges it received notice that "Petursson does not have investment or voting power with respect to the stock held by Iceland Genomics Ventures," and that "Icelandic Genomic Ventures Holding was not undergoing dissolution and did not intend to dissolve."  Genomatica alleges it received a demand that it "immediately restore ownership and title" of the stock to "Icelandic Genomic Ventures Holding."

Genomatica alleges that, "[a]t the same time, Petursson communicated with Genomatica and maintained that he had authority to effectuate the December 2011 stock transfer and that the stock was appropriately divided between Icelandic Genomic Holdings and Iceland Genomic Partners."

Genomatica asserts it is "indifferent with respect to which Defendant should receive all or a portion of the stock and claims no interest in such stock."

Genomatica therefore seeks to deposit the new stock certificates with the Court until the Court determines the lawful owner of the stock.

**DISCUSSION**

The Court will first address Genomatica's Motion to Dismiss & Discharge and IGVH's Motion for Summary Judgment.  The Court will thereafter address Genomatica's Motion to Dismiss IGVH's counterclaims.

**I.      Motion to Dismiss & Discharge and Motion for Summary Judgment**

At the core of both Genomatica's Motion to Dismiss & Discharge and IGVH's MSJ is the issue of whether interpleader is appropriate. Genomatica argues it has satisfied the interpleader requirements and should therefore be discharged. IGVH argues Genomatica has not satisfied the interpleader requirements, offering evidence in support of its MSJ demonstrating there exists no property subject to multiple, colorable claims.

**A.      Legal Standards**

**1.      Interpleader**

Genomatica filed its Complaint in Interpleader pursuant to Federal Rule of Civil Procedure 22, which provides in relevant part:

> Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:
>
> (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or
>
> (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

Because Rule 22 does not grant subject matter jurisdiction, there must be some statutory grant of jurisdiction. Gelfgren v. Republic Nat. Life Ins. Co., 680 F.2d 79, 81 (9th Cir. 1982). Genomatica asserts, and IGVH agrees, that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[3] Thus, unlike statutory interpleader pursuant to 28 U.S.C. § 1335, jurisdiction does not depend on the deposit of the disputed funds or property in the court's registry. Gelfgren, 680 F.2d at 81-82.

The Ninth Circuit provides that:

> An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory

---

[3] The Court agrees it has diversity jurisdiction. The parties are diverse, as Genomatica is a citizen of Delaware and California, IGVH is a foreign citizen, and the Petursson Defendants are foreign citizens. (ECF No. 1 at 2.) Further, the estimated value of the stock "far exceeds $75,000." (Id.)

interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants.

Mack v. Kuckenmeister, 619 F.3d 1010, 1023-24 (9th Cir. 2010) (quoting Rhoades v. Casey, 196 F.3d 592 (5th Cir. 1999)) (citation omitted).

A party seeking interpleader and discharge bears the burden of establishing that the requirements for interpleader are satisfied. Interfirst Bank Dallas, N.A. v. Purolator Courier Corp., 608 F. Supp. 351, 353 (N.D. Tex. 1985). The party must establish it is a stakeholder with a "good faith belief that there are or may be colorable competing claims to the stake." Michelman v. Lincoln Nat'l Life Ins. Co., 685 F.3d 887, 894 (9th Cir. 2012). This threshold is "necessarily low" so as not to conflict with the purpose of interpleader. Id. "The purpose of interpleader is for the stakeholder to 'protect itself against the problems posed by multiple claimants to a single fund.'" Mack, 619 F.3d at 1024 (quoting Minn. Mut. Life Ins. Co. v. Ensley, 174 F.3d 977, 980 (9th Cir. 1999)). This includes "limiting litigation expenses, which is not dependent on the merits of adverse claims, only their existence." Mack, 619 F.3d at 1024 (citation omitted).

Still, "[t]he availability of interpleader need not produce a harsh result for a legitimate claimant who is forced into interpleader due to a rival claimaint's non-meritorious assertions." Michelman, 685 F.3d at 898. Indeed, an interpleader action may be dismissed where a purported claimant does not actually have a potential claim. John Hancock Mut. Life Ins. Co. v. Beardslee, 216 F.2d 457 (7th Cir. 1954) (dismissing interpleader on motion by beneficiary where purported adverse claim by daughter to father's life insurance proceeds was only a "plea for help" and not a potential claim to the insurance proceeds).

**2.    Summary Judgment**

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of

law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.

**B.    Analysis**

In its Motion to Dismiss & Discharge, Genomatica asserts it has satisfied the interpleader requirements and should therefore be dismissed and discharged.

In opposition to Genomatica's Motion to Dismiss & Discharge, and in support of its Motion for Summary Judgment, IGVH argues there is no property that is subject to multiple, colorable claims.  Regarding the property at stake, IGVH argues the disputed shares were never actually reissued; that is, it has never been dispossessed of the shares.[4]  IGVH thus argues Genomatica is not technically a stakeholder because it does not possess any property that is subject to multiple claims. Regarding multiple claimants, IGVH argues Petursson is not a real or potential claimant because his request that Genomatica transfer the stock had no basis in fact or reality but was instead

---

[4] As evidence, IGVH provides the declaration of a member of its Board of Managers that states, among other things, that IGVH purchased 3,500,000 shares of Genomatica's common stock paid from IGVH's bank account with Bank Havilland (formerly Kaupthing Bank) ("Bank"), account number xxx.527 ("IGVH Bank Account").  (ECF No. 27-3 at 2.)  The declaration provides that 3,000,000 shares were issued on May 20, 2001, "as evidenced by Genomatica stock certificate No. PA 1," and an additional 500,000 shares were issued on April 12, 2002, "as evidenced by Genomatica stock certificate No. PA 2." (<u>Id.</u> at 2-3, ECF No. 27-4 at 2,4.) The declaration states that, following issuance of the shares, the share certificates were deposited as securities in IGVH's Bank Account and have been stored in the Bank's vault.  (ECF No. 27-3 at 3.)

The declaration further provides that Genomatica erroneously issued the shares to "Iceland Genomics Ventures, S.A.," but that IGVH's ownership of the stocks is confirmed by bank statements showing payments in amounts totaling $3,500,009 from IGVH's Bank Account, along with the corresponding deposit of the share certificates into the Bank's vault. (<u>Id.</u> at 3; ECF No. 27-9 at 4, 6.)

The declaration provides that, notwithstanding Petursson's representations that IGVH was dissolving, there have never been discussions regarding a possible dissolution – much less so any resolution to dissolve by IGVH's Board of Managers. (ECF No. 27-3 at 3.) The declaration provides that the share certificates have never been lost, as Petursson represented, and that IGVH's Board of Managers has never resolved to transfer the shares.  (<u>Id.</u>)

7

1    fraudulent.

2        In response, Genomatica argues first that IGVH waived any right to contest the

3    validity of the interpleader by admitting to the propriety of interpleader in its Answer

4    and by failing to raise a Rule 12 challenge.  Genomatica argues its Motion to Dismiss

5    & Discharge, rather than IGVH's Motion for Summary Judgment, is the appropriate

6    procedural vehicle to decide whether the interpleader is proper.  Genomatica further

7    argues that IGVH's claims of ownership are immaterial to the appropriateness of the

8    interpleader, as the issue of ownership is reserved for the second stage of an

9    interpleader action.

10       Genomatica further argues that, in any event, IGVH's evidence regarding

11   ownership is insufficient.  With regard to whether it is a stakeholder, Genomatica cites

12   Kitzer v. Phalen Park State Bank of St. Paul, 379 F.2d 650, 652 (8th Cir. 1967),

13   arguing that, as the issuing corporation, it does have "custody or possession" of the

14   shares.  Genomatica asserts that, regardless of whether Genomatica possesses the

15   original stock certificates, it did actually transfer the shares to Iceland Genomic

16   Partners.

17       Genomatica lastly argues that IGVH's evidence does not demonstrate a lack of

18   colorable competing claims to the Genomatica stock.  Genomatica asserts IGVH

19   applies an incorrect standard of law in arguing that Petursson's claim must be "valid."

20   Genomatica asserts that, under the correct standard, it must only show that it has "a real

21   and reasonable fear of exposure to double liability or the vexation of conflicting

22   claims."  Genomatica argues the pleadings in this matter establish the existence of

23   competing claims, as both IGVH and IGP have, in their responsive pleadings, claimed

24   ownership of the stock.  Genomatica further argues it has a good faith basis to believe

25   that Petursson has a colorable claim to the stock given that Petursson executed the

26   original stock purchase agreements on behalf of IGVH and the fact that IGVH never

27   alerted Genomatica to any issue of Petursson's authority for ten years.

28       In response, IGVH does not respond to Genomatica's waiver argument.  IGVH

reiterates its argument that there is no property at issue and that there are not multiple, colorable claims to the property. IGVH argues the shares could not have been transferred and Petursson cannot claim any interest in the shares because Petursson's request to transfer the shares was fraudulent in the first place. IGVH argues Petursson's fraud is confirmed by the Court's entry of default judgment against Petursson on IGVH's fraud claim.

In response, Genomatica asserts the Court should not take into consideration the default judgment against Petursson because, at this stage in the interpleader, the Court should only determine the appropriateness of interpleader – not the merits of any underlying claims.

As a preliminary matter, the Court notes that IGVH admitted in its Answer that this action is properly before the Court pursuant to this Court's diversity jurisdiction and Rule 22.

As another preliminary matter, the Court recognizes that the existence of any adverse claim relates only to the 400,000 shares of Genomatica stock that were transferred to IGP. Genomatica has not produced any evidence that there is an adverse claim to the 3,100,000 shares purportedly transferred to Genomic Holding, S.A. Moreover, the Genomic Holding, S.A. declaration that IGVH provided in support of its MSJ disclaims any interest in those 3,100,000 shares. Thus, any remaining adverse claim must be by IGP to the remaining 400,000 shares.

Next, acknowledging that share certificates are not themselves shares of stock but are merely evidence of stock ownership, the Court agrees that – regardless of ownership – Genomatica does have custody of the actual shares for purposes of this interpleader. Kitzer, 379 F.2d at 652. It is a "well settled principle of Delaware law that a certificate of stock is only evidence of share ownership and is not the stock itself." Joseph E. Seagram & Sons, Inc. v. Conoco, Inc., 519 F. Supp. 506, 513 (D. Del. 1981). "'Stockholder status is created instead by the subscription to stock and its acceptance by the corporation," and the issuance of shares of stock, accordingly, need

not be accompanied by the physical printing and distribution of certificates." Id. (citations omitted).  Further, the mere preparation of stock certificates does not constitute issuance of stock.  Graham v. Commerical Credit Co., 200 A.2d 828, 830 (Del. Ch. 1964).  Thus, Genomatica, as a custodian of the actual shares, is in the position of being forced to recognize the true owner of its stock.

The Court further agrees IGVH and IGP have presented competing claims to 400,000 shares of Genomatica stock as evidenced by IGVH's and Iceland Genomic Partner's responsive pleadings, as both companies claim to own those shares.  (ECF No. 7 at 6-7; ECF No. 18 at 4.)  Further, given Petursson's actions on behalf of "Iceland Genomics Ventures, S.A." (including execution of the original stock purchase agreements), the Court finds that Genomatica could, in good faith, believe that Petursson had authority to request the transfer of shares.

In sum, the Court finds Genomatica has met its burden of satisfying the interpleader requirements.  Accordingly, the Court **GRANTS** Genomatica's Motion to Dismiss & Discharge and therefore **DENIES** IGVH's Motion for Summary Judgment.

## II.    Counterclaims

IGVH asserts two counterclaims against Genomatica: (1) Failure to Transfer Stock and (2) Negligence/Breach of Fiduciary Duty.  (ECF No. 7 at 14-17.)  As a remedy, IGVH seeks rescission of the stock transfer and return of the shares.  IGVH also seeks attorney fees and costs incurred in connection with this action.

### A.    Legal Standards

#### 1.    Counterclaims in Interpleader

"The protection afforded by interpleader takes several forms. Most significantly, it prevents the stakeholder from being obliged to determine at his peril which claimant has the better claim." Lee v. W. Coast Life Ins. Co., 688 F.3d 1004, 1009 (9th Cir. 2012). "By contrast, interpleader protection generally does not extend to counterclaims that are not claims to the interpleaded funds." Id.  When an interpleaded defendant

"asserts that the stakeholder is independently liable to him, the interposition of a counterclaim is appropriate." <u>Id.</u> That is, "The stake marks the outer limits of the stakeholder's potential liability where the respective claimants' entitlement to the stake is the sole contested issue; however, where the stakeholder may be independently liable to one or more claimaints, interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake." <u>Id.</u> at 1011 (citing <u>State Farm Fire & Cas. Co. v. Tashire</u>, 386 U.S. 523 (1967)). Thus, where a stakeholder's negligence caused the controversy giving rise to an interpleader action, an interpleaded defendant may claim damages flowing from that negligence, including, for example, attorney fees incurred in the interpleader action. <u>Lee</u>, 688 F.3d at 1012. Such a claim of negligence, however, cannot be premised on the stakeholder's mere "failure to resolve the controversy over entitlement to the insurance proceeds in [the interpleaded defendant's] favor." <u>Id.</u>

### 2.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984); <u>see</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. <u>Robertson</u>, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007).

### B.    Analysis

Genomatica argues IGVH's counterclaims should be dismissed because (1) IGVH's counterclaims are directly related to the underlying interpleader action; (2)

IGVH has not adequately pled that it is a Genomatica shareholder; (3) there is no fiduciary duty to transfer stock; (4) corporations themselves do not owe fiduciary duties to their shareholders; (5) shareholders cannot sue corporations directly in these circumstances; and (6) even if IGVH could assert a counterclaim directly against Genomatica, it has failed to allege facts sufficient to state a claim for breach of any duty. Genomatica argues that, becuase it has met the requirements for an interpleader, and because IGVH's counterclaims should be dismissed, that Genomatica should be entirely dismissed from this action.

In response, IGVH argues it has pled sufficient facts to demonstrate that Genomatica should not be entirely dismissed from this action but that IGVH should be allowed to proceed with its counterclaims against Genomatica. IGVH asserts it has stated recognized claims for failure to transfer stock and for negligence/breach of fiduciary duty that survive Genomatica's Motion to Dismiss. In sum, IGVH argues Genomatica is not an innocent stakeholder in this action but is responsible for this controversy which has required IGVH to unnecessarily incur fees and expenses in proving its ownership of the disputed shares.

In reply, Genomatica argues it is an innocent stakeholder, in that it did not cause the instant controversy. It asserts the controversy "stems from an internal dispute between warring Iceland-based former investment partners, the existence and details of which were invisible to Genomatica before it filed the interpleader action." Genomatica reiterates that IGVH has not adequately pled that it is a Genomatica shareholder. Genomatica also reiterates its argument that it, as a corporation, cannot be sued directly be a shareholder for breach of fiduciary duty and notes that IGVH did not respond to this argument. Gonamatica finally argues that IGVH has not identified any fiduciary duty that Genomatica breached by transferring the stock at Petursson's request.

The Court concludes the rule that a corporation cannot be liable to a shareholder for breach of fiduciary duty is dispositive of IGVH's counterclaims, as both of IGVH's

counterclaims assert Genomatica breached duties owed to IGVH.

Under Delaware law, claims by a shareholder that are predicated solely on a breach of fiduciary duty by the corporation must be dismissed. Gaffin v. Teledyne, Inc., 1987 WL 18430, at *2 (Del. Ch. 1987). A shareholder complaint "must allege something other than a breach of fiduciary duty if it is to be deemed meritorious." Id. A corporation would, for example, "be liable to its stockholders where there is fraud or affirmative misconduct." Id. at *2-3.

Here, IGVH alleges, at most, that Genomatica breached duties to transfer the stock to IGVH and to investigate Petursson's request to transfer the stock. IGVH does not allege – or at least does not adequately allege – that Genomatica engaged in fraud or some affirmative misconduct. As such, IGVH's counterclaims against Genomatica, as a corporation, must be dismissed. Accordingly, Genomatica's Motion to Dismiss IGVH's Counterclaims is **GRANTED**.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.   Genomatica's Motion to Dismiss & Discharge is **GRANTED**;

2.   IGVH's Motion for Summary Judgment is **DENIED**;

3.   Genomatica shall deposit the new share certificates created at Petursson's direction with the Clerk of Court on or before **March 29, 2013**;

4.   Given that IGVH is the only remaining defendant in the interpleader portion of this action, IGVH shall file the pleadings, motions, and/or other filings necessary to conclude the interpleader portion of this action on or before **April 12, 2013**;

5.   Genomatica's Motion to Dismiss IGVH's Counterclaims is **GRANTED**.

DATED: March 21, 2013

HON. GONZALO P. CURIEL
United States District Judge

13